[No. B230076. Second Dist., Div. Five. Mar. 5, 2012.]

JEFFREY KAVIN, INC., Plaintiff and Appellant, v.
HAROLD FRYE et al., Defendants and Respondents.

## COUNSEL

Wheeler & Sheehan, David C. Wheeler and David A. Seeley for Plaintiff and Appellant.

Law Offices of Timothy R. Vrastil, Timothy R. Vrastil; Law Offices of John J. Jackman and John J. Jackman for Defendants and Respondents.

## OPINION

**MOSK, J.—**

### INTRODUCTION

One of four lessees, who was not a defendant in the action below, signed and delivered to the lessor, with the lessor's approval, a writing exercising an option to extend a lease after the expiration of the period to exercise that option. We hold that defendants, the three other colessees, were not bound by that purported exercise of the option. We also hold that the increased rental provision for holding over did not apply when one lessee did so with the consent of the lessor. We therefore affirm the judgment.

# BACKGROUND[1]

## A. *The Lease*

On February 17, 2004, lessor Jeffrey Kavin, Inc. (lessor),[2] entered into a written sublease agreement (referred to in that agreement as "Lease" and herein as lease) with Andrea Frye[3] and defendants and respondents Harold Frye, William Morgan, and Sescie Karabuykov (referred to as "Sessi") (defendants), as lessees (lessees). In the lease, lessees, as "Parties" to the lease, are collectively referred to as "Lessee." Harold is Andrea's father,[4] and Morgan is Karabuykov's stepfather. The initial term of the lease was for three years, ending on April 30, 2007.

The lease contained the following relevant provisions: "Surrender/ Restoration. Lessee shall surrender the Premises by the end of the last day of the Lease term . . . . [¶] No Right To Holdover. Lessee has no right to retain possession of the Premises or any part thereof beyond the expiration . . . of this Lease. In the event that Lessee holds over in violation of this Paragraph . . . then the Base Rent payable from and after the time of the expiration . . . of this Lease shall be increased to two hundred percent (200%) of the Base Rent applicable during the month immediately preceding such expiration . . . . Nothing contained herein shall be construed as a consent by Lessor to any holding over by Lessee; [¶] Option to extend: Lessor herby grants Lessee the option to extend the term of this lease for 1 additional 36 month period commencing when the initial term expires upon each and all of the following terms and conditions: [¶] (i) Lessee give to Lessor, and Lessor actually receives on a date which is prior to the date that the option period would commence (if exercised) by at least 6 months, a written notice of the exercise of the option to extend th[i]s Lease for said additional term, time being of [the] essence. If said notice of the exercise of the option is not so given and received, the option shall automatically expire. . . . [¶] Multiple Parties. . . . [I]f more than one person . . . is named herein as . . . Lessee, the obligations of such multiple parties shall be the joint and several responsibility of all persons . . . named herein as such . . . Lessee. . . . [¶] Waivers. No waiver by Lessor of the Default or Breach of any term, covenant or condition hereof by Lessee, shall be deemed a waiver of any other term, covenant or condition hereof, or of any subsequent Default or Breach by Lessee of the same or any

---

[1] The facts are stated pursuant to the applicable standard of review discussed below.

[2] Jeffrey Kavin is the owner of lessor and is referred to as Kavin. Kavin's acts presumably were on behalf of lessor and thus reference to Kavin includes lessor. Kavin was admitted to practice law from approximately 1979 through the early 1990's.

[3] Lessor's claims against Andrea Frye were discharged through her bankruptcy. She was not named as a defendant.

[4] Because Andrea Frye and Harold Frye share the same surname, we refer to them by their first names.

other term, covenant or condition hereof. . . . Regardless of Lessor's knowledge of Default or Breach at the time of accepting rent, the acceptance of rent by Lessor shall not be a waiver of any Default or Breach by Lessee of any provision hereof. Any payment given Lessor by Lessee may be accepted by Lessor on account of moneys or damages due Lessor . . . ."

### B. *Operative Facts*

#### 1. *Kavin's Testimony*

Lessor entered into a lease with Andrea and defendants, the original term of which ended on April 30, 2007. Prior to the parties entering into the lease, Kavin was concerned that if Andrea and Karabuykov were the only lessees and they defaulted on the lease, they would have no assets for lessor to pursue to satisfy the default. Kavin therefore required that Harold and Morgan also execute the lease as lessees.

As quoted above, the lease provided for the ability of lessees to exercise an option to extend the lease for 36 months by a written notice six months before the expiration of the lease term, and if lessees did not give the notice, the option automatically expired. Kavin inserted into the lease this automatic expiration language clause because he believed that it was for lessor's benefit.

At the leased premises, Andrea and Karabuykov opened a dress shop called Brunette Boutique. Kavin went to the leased premises one to two weeks after the option period had expired and told Andrea that they were late in exercising the option to extend the term of the lease; he therefore asked Andrea whether "they" were going to exercise the option. Andrea told Kavin that "we want to do that," and "we want to exercise the option." Andrea inquired of Kavin what she should write, and Kavin told her what to write. Kavin believed he told Andrea not to date the document. Andrea wrote in part, "We hereby exercise our option to extend our lease for another 36 month lease."

Andrea, Morgan, and Harold did not request the return of their security deposit until lessor filed this lawsuit. Harold paid the rent on one occasion after the original term of the lease had expired.

#### 2. *Andrea's Testimony*

Andrea and Karabuykov were partners in a business called Brunette Boutique at the leased premises. In approximately 2005, Karabuykov had a baby, and thereafter Karabuykov "pretty much gave [Andrea] the store." Thus, Andrea considered Brunette Boutique to be her business from and after that time.

Kavin went to the store and told Andrea that he needed to get a piece of paper extending the term of the lease, and he dictated "word for word" what Andrea needed to write down. Andrea did not create any of the words on her own. Andrea believed that the option to extend the lease belonged only to her and Brunette Boutique, her business, and that she exercised the option. Andrea called Karabuykov immediately after the former executed the notice, and said to Karabuykov, "Oh my God, [Kavin] came in and [he] made me sign this piece of paper." At the time Andrea signed the written notice purporting to exercise the option, she never had a discussion with Harold, Morgan, or Karabuykov in which they authorized Andrea to sign any document that would extend the lease.

### 3. *Karabuykov's Testimony*

Karabuykov and Andrea did not have a written agreement regarding Brunette Boutique. From November 18, 2005, through January 2006, Karabuykov left the business and was on maternity leave. She thereafter continued to work at the store until approximately November 2006, when she gave all of her interest in Brunette Boutique to Andrea because Karabuykov decided she could no longer work at the store in view of her responsibilities as a parent. Because Andrea was Karabuykov's friend, however, Karabuykov remained involved in the business, including remaining on the joint bank account for Brunette Boutique, going on buying trips, performing some bookkeeping tasks, and "look[ing] into . . . some rent issues." Prior to November 2006, Karabuykov did not authorize anyone to sign an extension of the lease on her behalf. Karabuykov had a second child in July 2007, and shortly thereafter, Andrea called her about the notice Andrea signed purporting to exercise the option to extend the term of the lease.

### 4. *Morgan's Testimony*

Morgan was a signatory to the lease, which he had read before signing. He understood that to exercise the option to extend the term of the lease, a written notice exercising the option needed to be given to lessor six months prior to the expiration of the lease or the option would automatically expire. He did not authorize anyone to exercise the option on his behalf. He told Karabuykov specifically that he did not want to exercise the option to extend the lease. He first learned in 2010 that an extension of the lease had ostensibly been made by Andrea's notice. He knew Andrea was still running the store, but he thought any extension was between her and the lessor. He never issued any checks to lessor, and he never participated in the operations of Brunette Boutique.

### 5. *Harold's Testimony*

Andrea wanted Harold to be a part of the lease, because she did not have sufficient assets to support the lease. He made a note to himself that the lease was to expire as of April 2007. At no time did he authorize anyone to sign an extension of the lease on his behalf. He recalled vaguely that between November 1, 2006, and April 30, 2007, he had a conversation with Andrea advising her that he would not be part of renewing the lease, and he did not think she should renew it because the store was not doing well.

On March 28, 2007, prior to the expiration of the original term of the lease, and months before Andrea signed the document purporting to exercise the option, Harold sent a letter to Kavin stating that Harold did not want to be a party to a lease extension. Harold did not receive a response to this letter. He did not send a copy of the letter to Andrea, but he believed he told her he was sending it.

Harold believed that the lease ended at the expiration of the original term. He assumed Andrea and lessor had some kind of agreement because Andrea was on the premises for over one year after the expiration of the lease. When Andrea told Harold she was being pressured to sign a new lease, she made some reference to Kavin suggesting that Harold did not have to be a party to a new lease. Harold wrote a check for $4,500 in partial payment of a month's rent because Andrea, who did not have sufficient funds, asked him to do so. That was the only time he recalled that Andrea asked him to pay the rent.

### C. *Proceedings*

Lessor filed a complaint against defendants seeking damages for breach of the lease. Lessor alleged that defendants exercised the option to renew the lease, thereby extending the lease term through April 30, 2010, and defendants remained in possession of the premises until vacating it on or about January 8, 2009.

After a bench trial, the trial court issued a statement of tentative decision that became a statement of final decision. The trial court made the following findings of fact that are not disputed by the parties. "Andrea . . . and . . . Karabuykov, as partners, operated a boutique dress shop called Brunette in the premises. Their fathers were not involved in the business. Plaintiff's principal, Jeffrey Kavin, initially refused to rent to Andrea . . . [and] Karabuykov, believing them to be credit risks. Kavin agreed to the lease only because the fathers of Andrea . . . and . . . Karabuykov agreed to be colessees.

"After the initial lease term ended, that is, after April 30, 2007, Andrea . . . continued to operate the dress store in the premises. Karabuykov had become a mother, and no longer worked at the store. Andrea . . . continued to pay the rent, but her payments became irregular. [Harold], on one occasion, paid $4,500 toward the rent (the check dated November 27, 2007 . . .). [Andrea] and Karabuykov vacated the premises, without notice to [Kavin], on January 8, 2009. They returned the merchandise they carried on consignment and ended their business relationship.

"Andrea . . . wrote out and handed to Kavin a note . . . reading: 'Mr. Kavin, We hereby exercise our option to extend our lease for another 36 month lease. Thank you. Andrea. . . .' The note is undated. [¶] Andrea . . . and Kavin agree that he visited the store to request that [Andrea] give him a signed writing to extend the lease. Both agree that Kavin dictated the wording to [Andrea]. [¶] . . . [¶] [T]he court concludes that the handwritten note was signed by Andrea in July or possibly in August, 2007.

"Harold . . . testified that he sent a letter to Kavin on March 31, 2007. The letter read: 'This is notice I will not be part of the above referenced lease after 4-30-07, due to Other [*sic*] pressing commitments. Thank you for your assistance to my daughter in the past.' "

The trial court also issued the legal conclusions. Citing *Schmitt v. Felix* (1958) 157 Cal.App.2d 642 [321 P.2d 473] (*Schmitt*), the trial court stated, "The law provides that a colessee in possession ordinarily can bind a lessee out of possession (if an extension is offered in the lease) simply by holding over after the end of the lease term. . . . However, [*Schmitt*] does not apply to the present circumstances because this lease itself provides that it can be extended only if the lessee gives the lessor 'a written notice of the exercise of the option.' "

The trial court also determined that Morgan and Harold would not have been bound by Andrea's written notice exercising the lease option, even if the notice had been timely. The trial court stated that a writing signed by one colessee does not bind other colessees who are not in possession, unless it is established that the lessee who signed the writing was authorized to bind the others, and Andrea had no authority to bind Morgan and Harold. The trial court added, "The obligations of the colessees were several—each, for instance, was individually liable for the rent—and the court cannot find from the lease language an authorization that any individual colessee could bind the others to a future lease term."

The trial court concluded that "Andrea . . . could bind . . . Karabuykov because they were partners in the operation [of] the business that occupied the leased premises and, under partnership law, any partner can enter into contracts that are binding on the partnership." According to the trial court, neither Andrea nor Karabuykov were bound to a lease extension by virtue of the writing signed by Andrea, however, because the lease provided that if the notice of the exercise of the option was not received by the lessor at least six months prior to the end of the lease—that is, before April 30, 2007—the option would automatically expire.

The trial court further decided that defendants were not liable for holdover rent because lessor "apparently agrees that by requesting, dictating and accepting [Andrea's] writing in late July [lessor] accepted a new rental arrangement and, thus, gave up any claim for additional hold-over rent under the original lease. The holdover section provides that the landlord is entitled to 200% of the base rent during any holdover period. [¶] The court's view, however, is that the colessees did surrender the premises. [Lessor] accepted rent payments from Andrea . . . for the period May through July, 2007 without complaint or other notice that double rent was due for that holdover period. Lessor continued to accept rent payments from Andrea . . . through December 2008 without any assertion that additional rents were due for the so-called holdover period. The court concludes that [lessor] was satisfied with the colessees' surrender of the premises, a surrender that left one of the original colessees in place and paying a monthly rent that [lessor] accepted."

## DISCUSSION

### A. *Standard of Review*

" 'In general, in reviewing a judgment based upon a statement of decision following a bench trial, "any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]" [Citation.] In a substantial evidence challenge to a judgment, the appellate court will "consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations. [Citations.] Moreover, findings of fact are liberally construed to support the judgment. [Citation.]' (*Estate of Young* (2008) 160 Cal.App.4th 62, 75–76 [72 Cal.Rptr.3d 520].)" (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757, 765 [123 Cal.Rptr.3d 562].)

"However, when the [trial court's findings of] decisive facts are undisputed, the reviewing court is confronted with a question of law and is not bound by the findings of the trial court. [Citation.] In other words, the appellate court is not bound by a trial court's interpretation of the law based on undisputed facts, but rather is free to draw its own conclusion of law. [Citation.]" (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528 [86 Cal.Rptr.2d 473].) We may affirm an appealed judgment on a basis that was not the basis of the trial court's opinion. "It is the ruling, and not the reason for the ruling, that is reviewed on appeal." (*Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 906–907 [91 Cal.Rptr.3d 617].)

### B. *Written Exercise of the Option*

Lessor contends that the trial court erred in concluding that the option to renew the lease term had expired by the lapse of time, so that the option could not be exercised. The trial court found that the written notice purporting to exercise the option was signed by Andrea in July or August 2007, approximately nine months after the time provided for in the lease. Lessor argues that the option could be exercised because he can and did waive the time limit set forth in the lease for the giving of written notice of exercising the option to extend the lease.

■ The lease provided that the lessor granted the lessees the option to extend the lease term by giving written notice of the exercise of the option at least six months before the expiration of the lease, or "the option shall automatically expire." " ' "An option is an offer by which a promisor binds himself in advance to make a contract if the optionee accepts upon the terms and within the time designated in the option. Since the optioner is bound while the optionee is free to accept or not as he chooses, courts are strict in holding an optionee to exact compliance with the terms of the option." ' (*Simons v. Young* (1979) 93 Cal.App.3d 170, 182 [155 Cal.Rptr. 460], quoting *Hayward Lbr. & Inv. Co. v. Const. Prod. Corp.* (1953) 117 Cal.App.2d 221, 229 [255 P.2d 473].) [¶] ■ In order to avail himself of the right to renew a lease as provided for by a lease option, a tenant must apprise the lessor in unequivocal terms of his unqualified intention to exercise his option, within the time, in the manner and on the terms stated in the lease. [Citations.]" (*Bekins Moving & Storage Co. v. Prudential Ins. Co.* (1985) 176 Cal.App.3d 245, 250–251 [221 Cal.Rptr. 738].)

■ Under the general rules governing contracts, "[w]here [an] offer . . . contain[s] . . . a time limitation, revocation occurs upon the expiration of the period specified. [Citation.] . . . [T]he end result is the . . . revocation of the offer and the creation of a right on the part of the offeror to refuse to

recognize a belated acceptance. In *Forbes* v. *Board of Missions* (1941) 17 Cal.2d 332 [110 P.2d 3], the court held[, however,] that this right was waived by an offeror who chose to ignore the delay and treat the acceptance as timely." (*Davies v. Langin* (1962) 203 Cal.App.2d 579, 585 [21 Cal.Rptr. 682]; see *Sabo v. Fasano* (1984) 154 Cal.App.3d 502, 505 [201 Cal.Rptr. 270].) In *Sabo v. Fasano, supra*, 154 Cal.App.3d 502, the court said, "It is well settled a contracting party may waive conditions placed in a contract solely for that party's benefit. [Citation.] The provision in an offer specifying the means of acceptance is such a condition and may be waived by the offeror. [Citations.] We find no reason why this rule should not apply in the case of a time limit imposed by the offeror for acceptance by the offeree." (*Id.* at p. 505.)

The trial court found that Harold and Morgan were parties to the lease only because Kavin would not agree to the lease to Andrea and Karabuykov unless Harold and Morgan were also signatories to the lease. Under the circumstances, the requirement of a timely written notice of the exercise of the option was for the benefit of Harold and Morgan, as well as the benefit of lessor. Harold and Morgan would benefit from strict compliance with the terms of the option provision exposing them to a longer duration of liability. Lessor has not established that the requirement of a timely written notice of the exercise of the option was for its sole benefit such that it could unilaterally waive it.

■ Even if lessor could and did waive the requirement that the written notice exercising the option must be given six months before the expiration of the original term of the lease, Andrea's written notice did not bind Morgan and Harold because they did not authorize her to sign the notice on their behalf. "A renewal right included in a lease to several tenants must be exercised by all. No one tenant may bind another or be bound by another." (2 Friedman on Leases (5th ed. 1990) § 14:2, p. 14-52, fn. omitted; see *Gurunian v. Grossman* (1951) 331 Mich. 412 [49 N.W.2d 354, 357] [" 'A covenant to renew a lease made to more than one lessee may not be enforced by one of them for himself, nor can he bind his colessee by his election to renew, unless authority had been vested in him to do so.' [Citation.]"]; see also *Kleros Building Corp. v. Battaglia* (1952) 348 Ill.App. 445 [109 N.E.2d 221, 222] [" 'the option [to renew the lease] could . . . have been exercised only by [the lessees] jointly' "].) The same principle applies to Karabuykov. There is no evidence that Andrea and Karabuykov were partners in Brunette Boutique as of the time Andrea signed the option letter. Karabuykov testified she gave all of her interest in the store to Andrea a year earlier. Brunette Boutique was not a named lessee, and there is no indication that lessor believed it had leased the premises to a partnership. Moreover, lessor does not contend Karabuykov could be bound under a partnership theory. We need not decide

whether Andrea was bound by her exercise of the option because lessor was not able to pursue an action against her.[5]

Although lessor argues that the lease itself allows one lessee to bind the others in connection with an option to extend the lease, lessor does not contend that defendants otherwise gave Andrea authority to bind them to an option extending the lease term. The trial court found that Andrea had no authority to sign for Morgan and Harold to exercise the option to extend the term of the lease. Andrea and defendants testified at trial that defendants did not give Andrea authority to sign any document that would extend the lease. Harold also provided Kavin with notice, prior to the expiration of the original lease term, that he, Harold, would not be part of the lease after the expiration of the original term. Kavin, therefore, specifically was put on notice that Harold did not consent to an option to extend the lease term. (See *Schmitt, supra,* 157 Cal.App.2d at pp. 647–648 [a lessee is not liable for a month-to-month holdover by a colessee's continued possession of the property upon notifying the lessor that the lessee is no longer connected with his colessee and would not remain in possession after termination of the lease].)

■ Lessor contends that even without Andrea having the authority to sign a writing exercising the option on defendants' behalf, defendants are nonetheless bound to the obligation purportedly created by Andrea's exercise of the option to extend the lease because joint and several liability of colessees is presumed and the lease specifically provides, "[I]f more than one person . . . is named herein as . . . Lessee, the obligations of such multiple parties shall be the joint and several responsibility of all persons . . . named herein as such . . . Lessee." Neither this clause nor joint and several liability in general authorizes any one colessee to exercise the option to extend the lease term on behalf of the other colessees. Rather, the clause and the doctrine of joint and several liability impose joint and several responsibility in the event there is liability under the lease because Andrea did not have authority to bind defendants to the option renewal, defendants are not subject to liability under that option renewal by virtue of joint and several liability. Moreover, those authorities providing that one colessee may not bind another colessee to an exercise of an option to renew the lease term (see 2 Friedman on Leases, *supra,* § 14:2, p. 14-52; *Gurunian v. Grossman, supra,* 49 N.W.2d at p. 357) do not except from this principle leases in which there is a clause providing for joint and several liability of the lessees. The attempt to exercise the option by Andrea's written notice was ineffective and not binding on defendants.

---

[5] There is therefore no reason to discuss any issue concerning lessor's waiver of any term vis-à-vis Andrea.

## C. *Exercising the Option by Conduct*

Lessor contends that the trial court erred by finding that the option to extend the term of the lease cannot be exercised by the conduct of the parties so as to bind all of the lessees. But as the trial court noted, the lease provided that the option may be exercised only by timely written notice given six months prior to the termination of the lease.

In 1933, our Supreme Court held that an option to extend the term of the lease could be exercised by the conduct of the parties to the lease at and after the time of the expiration of the original lease term, without the lessee giving written notice as provided in the lease, when the lessor had waived the requirement of a written notice to exercise the option. (*Tay-Holbrook, Inc. v. Tutt* (1933) 218 Cal. 600 [24 P.2d 463] (*Tay-Holbrook, Inc.*).) In *Tay-Holbrook, Inc.*, the plaintiff, the lessee of a lease entered into with the defendants, as lessors, appealed a judgment declaring that the term of the lease had been extended. The lease provided that the lessee could exercise an option to extend the lease by giving written notice of his election to extend the lease to the lessors within 60 days of the expiration of the original term of the lease. The lessee did not give written notice of his decision to exercise the option as set forth in the lease, but remained in possession of the premises, and paid the increased rent to be paid by him under the renewal of the lease, which payment was accepted by the lessor. (*Id.* at pp. 601–602.) The trial court found that the provision in the lease requiring written notice of the lessee's decision to exercise the option for a renewal of the lease had been waived by the parties, particularly the lessors for whose benefit the requirement of the written notice was inserted into the lease. (*Id.* at p. 603.)

The Supreme Court affirmed the judgment, holding that a written communication was not necessary in order to exercise the option because the lessor waived the requirement of a written notice, and the option was exercised based on the parties' conduct. (*Tay-Holbrook, Inc., supra*, 218 Cal. at pp. 603–607.) The court stated, "The evidence shows that at the expiration of the original term of five years, the [lessee] remained in possession of the leased premises and paid the increased rental provided for by the terms of the lease. The [lessors] after the expiration of the lease permitted [lessee] to remain in possession of the premises and accepted from it the increased rental which was to be paid only in case the lease was renewed. This course of business continued for a period of more than a year without either party questioning the rights of the other. Were we considering this case from the standpoint of the rights of the tenant, we would be disposed to hold that the landlords, by accepting the increased rental and by permitting the tenant to remain and enjoy the possession of the leased premises, had waived the formalities prescribed in the lease in order to effect its renewal. We can see

no reason why the same rule should not govern when applied to the rights of the landlords. Whether these provisions of the lease providing for its renewal were for the benefit of the landlords or the tenant is, in our opinion, a matter of no great consequence. Neither party expressly conformed to them, but both parties conducted themselves as if these provisions had been literally complied with." (*Id.* at p. 604.) The court also stated, "We are . . . basing our opinion in this case . . . upon the entire course of conduct and the business dealings of the parties thereto, following the expiration of said original term." (*Id.* at p. 607; see generally Stoebuck and Whitman, The Law of Property (3d ed. 2000) Landlord and Tenant, § 6.63, p. 376 (Stoebuck and Whitman) [differences of opinion on whether holding over and payment of rent constitutes an election]; 2 Friedman on Leases, *supra*, § 14:3.1, pp. 14-79 to 14-80 [conflict in authorities as to whether holdover is exercise of option].)

Unlike in *Tay-Holbrook, Inc., supra*, 218 Cal. 600, in the instant case lessor did not waive the requirement of a written notice to exercise the option or otherwise conduct himself as if written notice was not required. Kavin insisted that Andrea provide written notice. The trial court found, and lessor does not dispute, that Kavin went to Andrea and requested that she give him a signed writing to extend the lease term, and dictated the wording to Andrea. A written notice was required to exercise the option. Thus, Andrea's holding over did not, under these circumstances, constitute an exercise of the option binding on defendants.

Lessor relies on *Schmitt, supra*, 157 Cal.App.2d 642, in which the plaintiffs, as lessors, entered into a lease with the three defendants, as lessees, for one year, and the lease granted the lessees the option to extend the lease for an additional year without stating how the option could be exercised. No notice of the exercise of the option was given, but one of the defendants remained in possession of the premises for the entire term provided by the option, and rent was paid during that period. The court, in holding that another defendant who never occupied the premises was bound by the option by the acts of the other defendant who remained on the premises and paid rent, stated, "A written exercise of an option . . . is not necessary. Payment by the tenant of the rental provided in the lease and its acceptance by the landlord constitutes an exercise of the option. [Citation.] . . . In California . . . the exercise of the option is not considered to make a new agreement but merely the extension of the original term of the lease. '. . . [W]here a lease gives an option to the lessee "to renew" the lease for a specified term without requiring the execution of a new lease, the extension is a continuation of the tenancy under the original lease. [Citations.]' [Citations.] [¶] 'A colessee of real property is a tenant in common of the leasehold interest. The possession of one cotenant is possession for all. [Citations.]' [Citation.] . . . [¶] Therefore, as an option to renew may be exercised by a tenant remaining in possession and paying the rent, as such renewal is merely an extension of the

original term and is not a new agreement, and as the possession of one colessee is that of the other colessee, [the] defendant . . . was constructively in possession at the time of the extension of the lease and was therefore bound by his colessees' acts." (*Id.* at pp. 645–646; see also Stoebuck and Whitman, *supra*, § 6.63, p. 376 [when option clause is for an extension rather than a renewal, holding over and paying rent generally is sufficient for an extension]; see 2 Friedman on Leases, *supra*, § 14:3.1, p. 14-79 ["The distinction between extensions and renewals, and the requirement—such as it is—of a new lease, have been properly criticized."].)

*Schmitt, supra*, 157 Cal.App.2d 642 is distinguishable because in that case, although the lease provided that the lessees could exercise an option to extend the term of the lease, unlike in the instant case, it did not provide the manner in which it could be exercised or that it must be exercised by a timely, written notice by the lessee. In that case, *holding over* by one lessee would be deemed an extension of the lease binding on a lessee not in possession. Here, the question is whether the *required written exercise* of an option to extend the lease by one lessee would be binding on other lessees. There is a difference. In this case, the required writing only has the signature of one tenant. The "lessee" "parties" include Andrea and defendants, and the lease requires "lessee"—not *a* lessee—to give timely, written notice of the exercise of the option. By this requirement, all lessees must sign the exercise of the option or give other lessees the authority to do so.

 The court in *ADV Corp. v. Wikman* (1986) 178 Cal.App.3d 61 [223 Cal.Rptr. 262], said that a lessee continuing in possession after the expiration of the original term of the lease exercises the option to extend the lease when the lease does not require that the lessee give notice of an intent to exercise the option. The court explained, "In other words, 'if the lessor gives the lessee the right to an extension of the term, and does not specifically require him to give notice of his election to avail himself of such right, his mere continuance in possession after the original term is to be regarded as showing his election to that effect. . . .' [Citation.]" (*Id.* at p. 66.) The court did not specifically state that remaining in possession is not an exercise of the option to extend the lease when the lease provides a specific method and time for such an exercise of the option. But that is the inference that can be drawn from the court's qualification that " 'no specific form of notice having been required.' " (*Ibid.*, quoting *Shamp v. White* (1895) 106 Cal. 220, 222 [39 P. 537].) And as one authority has written in connection with whether holding over constitutes an exercise of the option to extend the lease, "If a lease requires notice of a tenant's election, it may not make any difference whether a renewal or extension is involved." (2 Friedman on Leases, *supra*, § 14:3.1, p. 14-82 [noting conflicting authorities].) Thus, when as here, the lease requires notice of a tenant's election, it would seem that all of the lessees must sign the "renewal" of a lease to be bound.

In short, even if holding over and the payment and acceptance of rent could be viewed as a waiver of the notice of renewal requirements of the lease (see 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 531, p. 611), such a holdover should not be deemed binding on defendants when lessor required a written exercise of the option. Here, the lease provided that lessees must provide written notice of the exercise of the option to extend the lease, and as stated *ante*, lessor did not waive that requirement. Accordingly, the option could not be exercised as to defendants by the conduct of Andrea. Defendants were not bound by any purported extension of the lease term.

### D. *Defendants' Liability for Holdover Rent*

The trial court found that defendants had surrendered the premises, but that Andrea remained in possession. Lessor contends that the trial court erred in finding that defendants were not liable for holdover rent of 200 percent of the base rent. The lease provides that the premises must be surrendered by the end of the last day of the lease term. It also provides, "Lessee has no right to retain possession of the Premises or any part thereof beyond the expiration . . . of [the] Lease. [But i]n the event that Lessee holds *over in violation of this Paragraph* . . . then the Base Rent payable from and after the time of the expiration . . . of this Lease shall be increased to two hundred percent (200%) of the Base Rent applicable during the month immediately preceding such expiration . . . . Nothing contained herein shall be construed as a consent by Lessor to any holding over by Lessee . . . ." (Italics added.) Lessor argues that its acceptance of the base rent did not constitute a waiver of its right under the lease to the holdover rent, pointing to a provision in the lease that states, "Regardless of Lessor's knowledge of Default or Breach at the time of accepting rent, the acceptance of rent by Lessor shall not be a waiver of any Default or Breach by Lessee of any provision hereof. Any payment given Lessor by Lessee may be accepted by Lessor on account of moneys or damages due Lessor . . . ."[6] Lessor contends that because all of the lessees are jointly and severally liable under the lease, they would be jointly and severally liable for the amount of rent specified in the lease provision for holding over.

Even if lessor did not waive its right to seek the full amount of the holdover rent from lessees,[7] lessor consented to Andrea's continued occupancy of the premises—she was not in "violation" of any provision in the

---

[6] "A provision fixing a sum as *rental* to be paid if the tenant holds over after expiration of the lease is not treated as a penalty, though much greater in amount than that previously specified." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 520, p. 565.)

[7] The court in *Gould v. Corinthian Colleges, Inc.* (2011) 192 Cal.App.4th 1176, 1180 [120 Cal.Rptr.3d 943] said that the plaintiff "cites no authority that an antiwaiver provision in a lease cannot itself be waived."

lease.[8] Therefore, the holdover provision providing for a monthly rent of 200 percent of the base rent does not apply.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

Kriegler, J., concurred.

**TURNER, P. J.,** Concurring.—I concur in the decision to affirm the judgment. Plaintiff, Jeffrey Kavin, Inc., presents complicated arguments in an effort to reverse the judgment. My sense of it is that we should reject plaintiff's sophisticated analysis on simpler grounds. In the case of an ambiguous contract, we review the issues for substantial evidence. (*Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1521 [69 Cal.Rptr.3d 589]; *ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1267–1268 & fn. 4 [35 Cal.Rptr.3d 343].) In my view, there is substantial evidence plaintiff entered into a lease extension only with Andrea Lynne Frye.

According to Ms. Frye: Jeffrey Kavin walked into her shop, the only business on the premises; he told her she needed to get a piece of paper; Mr. Kavin then dictated word for word what she needed to write which is what she did; she was told she "had" to sign the document; and she later said he "made" her sign the extension. The language "our" in the extension agreement is vague. There were only two people present, Mr. Kavin and Ms. Frye. The other signatories to the lease were not present. Only Ms. Frye's business remained on the premises when the undated agreement was executed. Because the extension agreement's vague language was selected exclusively by Mr. Kavin, it must be construed against plaintiff. (Civ. Code, § 1654; *Schram Construction, Inc. v. Regents of University of California* (2010) 187 Cal.App.4th 1040, 1060, fn. 14 [114 Cal.Rptr.3d 680].) This is an issue of contract creation and what was the substance of the parties' agreement. Substantial evidence supports the trial court's ruling the agreement extended only to Ms. Frye.

---

[8] Cases distinguish between a holdover with and without consent. (See, e.g., *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 740 [124 Cal.Rptr.3d 555]; *Shenson v. Shenson* (1954) 124 Cal.App.2d 747, 753 [270 P.2d 896].)

At oral argument and in its briefs, plaintiff adverts to the lease's antiwaiver provision. The answer raises without specification the defense of waiver. In my view, Mr. Kavin's conduct, as described by Ms. Frye, constitutes waiver of the antiwaiver provisions of the original lease. (*Gould v. Corinthian Colleges, Inc.* (2011) 192 Cal.App.4th 1176, 1179–1180 [120 Cal.Rptr.3d 943].)