[Civ. No. 57331. Second Dist., Div. Five. July 9, 1980.]

LEONHARDI-SMITH, INC., Plaintiff and Respondent, v.
LOUIS M. CAMERON, as Executor, etc., et al.,
Defendants and Appellants.

LOUIS M. CAMERON, as Executor, etc., et al.,
Plaintiffs and Appellants, v.
LEONHARDI-SMITH, INC., Defendant and Respondent.

COUNSEL

Wise & Nelson, Anthony F. Wiezorek, Cotten, Day & Doyle and Roger C. Wesley for Plaintiffs and Appellants and Defendants and Appellants.

Kilpatrick, Clayton, Meyer & Madden, R. J. Kilpatrick and Steven A. Jones for Plaintiff and Respondent and Defendant and Respondent.

OPINION

**STEPHENS, Acting P. J.**—Consolidated actions, one for declaratory relief and one for unlawful detainer, resulted in a judgment for tenants (Leonhardi-Smith). The hub of the dispute was the effect to be given to a lease of a restaurant, El Galleon, in Avalon on Santa Catalina Island. The lease involved was initially entered into on May 18, 1971. It provided for a three-year term with a series of four additional options for three years each. The initial term rental was set at $800 per month and at the exercise of each option the rental would be increased $25. Also required to be paid were the taxes and insurance.[1]

The lessors were Suzanne and Michael Cameron; these persons died in 1975 and 1976, respectively. Louis Cameron (sometimes hereinafter referred to as Louis) became executor of both estates and after the death of Michael Cameron (sometimes hereinafter referred to as Mi-

[1]Other provisions will be mentioned as they are deemed appropriate to the solution of the issues.

chael), Louis was paid the rentals.[2] The sole devisee of the property involved was Louis' sister, Thelma Splane, who resided on the island with her brother. Mrs. Splane taught school on the island except for periods when school was not in session; at those times she lived with her husband on the mainland.

The lessees were John Leonhardi and Betty Smith. On May 16, 1974, the lessees gave then living Michael Cameron written notice exercising the option. This notice was some 65 days late for compliance with a 90 days from term-end provision in the lease; nevertheless it was accepted as a valid exercise of the option.

Some months later, and still during the life of Michael Cameron, a transfer of the lease from John and Betty to Leonhardi-Smith, Inc. occurred.

During the second lease term which was to end May 31, 1977, what is claimed to be an oral notice to exercise the third lease term option was given in February 1977 and accepted; in addition, on April 24, 1977, a written exercise of the option was made and accepted. The thrust of this appeal is the questioned sufficiency of evidence to support the finding of efficacy in the exercise of the option. There is no question but that any written notice was late, i.e., not prior to the 90 days before the date of expiration of the lease term though the February oral declaration exceeded the 90-day requirement. The extent of the claimed oral exercise of option excerpted from the record is the following: (At a casual meeting between John, Betty and Louis in an alleyway behind the restaurant in February 1977):

"[Betty]: 'Lou, you know we want the Galleon,' or something to that effect, or—I don't remember exactly what I said. [¶] He says, 'Well, of course.' [¶] That was all that was said outside of hi or what's going on or something. I don't remember.

"Q. You said what to him?

"[Betty]: I said, 'You know we want to keep the Galleon?' [¶] He said, 'Well, of course.'" (At a meeting in the Galleon office between John, Betty and Louis):

---

[2]Louis had been collecting the rent for some time prior to Michael's death.

"Q. [of Betty]: And you heard him testify that that was in late April of 1977?

"A. Right. . . . [¶] I don't remember the whole conversation, but he [Louis] said at that time, 'Would you put it in writing. The court wants everything in writing. [¶] I said, 'Okay, Fine.'

"Q. It. What do you mean 'it'? Is that what he said?

"A. I'm sorry?

"Q. To put it in writing.

"A. The option in writing. He said, 'The court wants everything in writing.' So I wrote a letter."

Thereafter, Betty wrote the letter dated April 24, 1977, stating: "This is to inform you that we would like to exercise our option for the next three years on the El Galleon at $850 per month."

At a later page of the record, Betty testified that the alleyway conversation was: "I said, 'Lou, you know we want to keep the restaurant,' and he said, 'Well, I assume you do.' . . ."

During the testimony of John, he stated (re the alleyway conversation noted previously):

"She [Betty] told me she liked to exercise the option on our—our next option.

"Q. What did Louis Cameron say?

"A. He said, 'I expected that.'"

And with reference to the office meeting, John testified: "A. He told Betty he should have a written notice for the probate court.

"Q. What did she say?

"A. 'Okay.'"

In addition to the conversation quoted and the giving of the written exercise of option, the lessees rely upon certain acts and observations of the lessor. In particular, the El Galleon underwent what could be as much as a $20,000 improvement after the "renewal." A new patio floor was installed, among other items enumerated, and this change was to the exterior of the restaurant and obvious to anyone passing by. Louis admitted knowing of work being done, though he minimized it; Thelma Splane denied observing it.

Rents were paid at the "renewal" rate and accepted by Louis as executor of Michael's estate. Thelma and Louis discussed the late exercise of option and Thelma obtained some legal input through talk with a lawyer. Louis and John had some generalized discussion about rent increases. No statement, written or oral, declaring a forfeiture of the lease was given to Leonhardi-Smith until Leonhardi-Smith placed an advertisement in the Wall Street Journal for a sale of the restaurant, at which time legal action to terminate the lease and oust Leonhardi-Smith was commenced. In February 1978, prior to the referred to legal action, a meeting was had between Leonhardi-Smith, Louis, Thelma and her husband, and Attorney Wesley, wherein the lateness of the option was discussed and a need for higher rentals suggested.

Based on all of the evidence, the court found that the lease had been renewed and unlawful detainer was inappropriate.

### THE BASIC QUESTION:

■ Can the executor bind the estate to a renewal of a lease? The answer is *Yes*—where the lease provides for an extension through given action by the lessee. (*Erickson* v. *Boothe* (1947) 79 Cal.App.2d 266, 272, et seq. [179 P.2d 611].) A renewal under an existing lease merely extends the term under the conditions specified in the lease and is not a new lease requiring court approval.

■ Can the executor waive, by action or word, a termination of a lease occasioned by a failure of a lessee to exercise his renewal option in a timely manner, but before the lease has actually expired? The answer is *Yes*.

Section 844, Probate Code, is inapplicable to the instant action. A renewal of a lease is not a new lease. (*Erickson* v. *Boothe, supra,* 79

Cal.App.2d 266, 278-279.) An executor is obligated to exercise his best business judgment in preserving the assets of the estate. The waiver of a period of notice, all other conditions being performed, does not revive a terminated lease interest; it merely waives a condition precedent to its continued vitality. Here, the estate could enforce a three-year lease from May 31, 1977, and we have been cited to no authority which would permit enforcement by but one of the parties to a contract obligation. █ There was no change in the lease, as we have noted, and the only purpose of the written notice to renew was to formalize the obligations of the parties. While the day of the handshake contract has come close to sunset, nevertheless estoppel has not been stricken from the principles of law. The actions here depicted, in the friendly surroundings of Avalon, between persons well known to each other, and in regular contact, constitute a fair and reasonable business transaction. The probate court and the laws it administers for the protection of beneficiaries does not require injustice and avarice. The lease existed; it was desired extended; a written notice was received exercising the option and satisfying the statute of frauds; the increased rents were promptly paid and accepted; and substantial improvements were made by the lessees to the property in reliance on the continuation of the lease. All of these factors militate against a judgment different from that rendered by the trial court.

In *Satterfield* v. *Garmire* (1967) 65 Cal.2d 638 [56 Cal.Rptr. 102, 422 P.2d 990], the court said (at pp. 643-644): "The instant case is distinguishable from the foregoing authorities [holding a claim against an estate mandatory] in that defendant violated no fiduciary duty to the beneficiaries of the estate in waiving formal presentation of the claim. At the time of the alleged waiver, it was *conceded* that no valid defense existed to the claim. Thus, if any waiver occurred, it was merely of the right to formal presentation of the claim, and no substantial interest of the beneficiaries was surrendered." (Italics in original.) We recognize distinctions may be asserted between our case and *Satterfield*; however, the binding principle applies in the two. █ As that same authority said at page 645 in quoting from *Farrell* v. *County of Placer* (1944) 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323]: "'Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention.'"

█ Having determined that the trial court was correct in holding that the option to renew the lease, as exercised, was effective through

acceptance by the executor, we need not respond to the subsidiary issues raised by appellant Cameron.[3]

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied July 23, 1980, and appellants' petition for a hearing by the Supreme Court was denied September 3, 1980.

---

[3]These include argument that the heir, Thelma, did not waive the 90-day option requirement; that acceptance of an oral exercise of the option was not binding on the probate court; and insufficiency of the evidence to establish oral waiver and acceptance.