[No. G001161. Fourth Dist., Div. Three. Feb. 27, 1986.]

ADV CORPORATION, Plaintiff and Respondent, v.
BURTON A. WIKMAN et al., Defendants and Appellants.

BURTON A. WIKMAN et al., Plaintiffs and Appellants, v.
ADV CORPORATION, Defendant and Respondent.

**COUNSEL**

Fazio, McDonnell, Briggs, Ward & Holland and Jonathan A. Goldstein for Plaintiffs and Appellants and Defendants and Appellants.

Howser, Gertner & Brown and David L. Sanner for Plaintiff and Respondent and Defendant and Respondent.

---

**OPINION**

**SONENSHINE, J.**—In this appeal we determine the propriety of the trial court's interpretation of a lease option renewal provision silent as to the time within which the option could be exercised. Based upon the parties' past relationship and the lessee's conduct in improving the property, the court found the lessee's payment of increased rent five days after the initial lease term expired constituted a valid exercise of the option. ■ ■ ■ ■ The record does not support the court's decision on *that* ground but the judgment must be affirmed nonetheless.[1] We conclude the lessee's continued possession of the property was sufficient to exercise the option.

I

The pertinent facts are not in dispute. Appellants, the Wikmans, are the owners of real property located at 520 South Harbor Boulevard in Santa Ana. In 1978 they leased the premises to respondent ADV for the purpose of conducting a used car sales operation. The written lease agreement provided for a term of five years at a rental of $1,300 per month. It also included an option to renew for an additional five years at a rental of $1,600.[2]

On April 1, 1983, the Wikmans served ADV with a mailgram, stating: "Lease expired on 520 South Harbor Boulevard, Santa Ana at midnight, 3-31-83. Lease terminated. You are now holding over under Section 3, page 18 of said lease dated 3-30-78." Three days later ADV sent the Wikmans a mailgram of its own: "ADV Corp., a California corporation, is exercising its 5 year option until March 31, 1988, as in Article One, page one, line 21 of Lease Agreement dated March 30, 1978. Please take note that no notice is required in Lease Agreement. Check for $1,600 will be forthcoming."

---

[1]"If the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion. Two theories seem to be involved here: *First,* that the appellate court reviews the *action* of the lower court and not the reasons for its action; *second,* that there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266; italics in original.)

[2]Article I of the lease states: "The term of this Lease shall be for a period of five (5) years commencing on the 1st day of April, 1978, and terminating at midnight on the 31st day of March, 1983, unless sooner terminated as hereinafter provided. Tenant has available a five (5) year option renewable to March 31, 1988, at a rental of ONE THOUSAND SIX HUNDRED AND NO/100 ($1,600.00) DOLLARS, subject to the same terms and conditions."

On April 5th, ADV tendered a check in the sum of $1,600 for the April 1983 rental. On April 15th the Wikmans served ADV with a 30-day notice of termination of tenancy. On May 9th ADV filed a complaint seeking a judicial determination that it exercised its option to renew the lease and was entitled to possession for an additional term of five years. On May 20th the Wikmans instituted an unlawful detainer action. Both lawsuits were consolidated for purposes of trial.

The trial court concluded ADV was entitled to continue as lessee at the rental and under the terms and conditions set forth in the lease.[3] Based upon three factors, the court found ADV had effectively exercised the option by tendering the increased rental: (1) the prior relationship between the parties;[4] (2) ADV's conduct in expanding the tenant improvements;[5] and (3) specific language in the lease, i.e., article I, article VII, section 2, and article IX.[6]

On October 12th judgment was entered in ADV's favor. On November 1st the Wikmans' motion for new trial was denied.[7] On December 9th ADV

---

[3]The court's minute order provides: "There was no prescribed manner by which [ADV] was required to exercise its option to extend the lease. Based upon the prior relationship of the parties . . ., the conduct of [ADV] (expanding the tenant improvements in 1982) [and] the language used in the lease (specifically Article I, Article VII, Section 2 and Article IX), the reasonable construction to be placed on the option provision is that the option could be exercised by merely increasing the rental of $1,600 per month at the beginning of the extended term, that is April 1983. The evidence was that such increased rental was tendered.

"The notice of expiration and the notice of termination without any prior inquiry as to [ADV's] intentions were understandable efforts to terminate the lease which by 1983 had turned out to be a very favorable lease for [ADV]. The effort was no doubt sparked by [the Wikmans'] discovery in 1982 that the value of the land had increased to approximately $1,000,000."

[4]In 1974 the Wikmans operated a used car lot on the subject premises and employed Bruce Fisher as a buyer and salesman. The following year the business was incorporated as ADV Corp. (with the Wikmans and Fisher as shareholders) and the Wikmans purchased the property. In 1978 the Wikmans sold their stock to Fisher who continued to operate the lot as ADV Corp. In conjunction with the buy-out, the Wikmans and ADV entered into the subject lease.

[5]In January 1982 ADV purchased a new office trailer equipped with a porch and awnings at a cost of $14,000. A storage shed was also purchased for $1,500. In August 1983, for the third time during the lease term, ADV resurfaced the asphalt lot. ADV also expended between $15,000 and $20,000 annually on advertising.

[6]Article VII, section 2, required ADV to remove at the termination of the lease any improvements and trade fixtures erected or placed on the property during the lease term. At trial ADV argued it was reasonable for the court to assume the parties intended ADV's failure to surrender the premises and remove any fixtures to constitute an exercise of the option.

Article IX permitted the Wikmans at any time after 30 days prior to the expiration of the lease term, to place "for rent" or "for lease" signs on the premises in the event ADV elected not to exercise the option. ADV argued the Wikmans therefore had the burden to inquire of ADV as to its intentions 30 days before the lease expired so as to ascertain whether or not they could put up such signs.

[7]Appellants' notice of intention to move for new trial was filed September 22nd, prior to entry of judgment.

served upon the Wikmans notice of entry of that judgment. This appeal followed.

## II

■   The Wikmans contend neither the parties' past relationship nor the fact ADV expended monies on improving the property, is relevant to the question presented. They point to testimony of ADV's principal, Bruce Fisher, indicating the parties had no discussions between 1978 and March 31, 1983 concerning the option. In fact, notwithstanding their prior business relationship, the parties had limited contact during the entire five-year period.

As for ADV's improvements, the Wikmans concede "large expenditures by a tenant for permanent improvements near the end of a lease term would constitute evidence of the tenant's intent to exercise an option to renew if the landlord was aware of such improvements." However, they contend the record is devoid of any competent evidence in this regard.[8]

ADV's argument encompasses the identical factors relied upon by the trial court in reaching its conclusion: (1) the Wikmans were put on notice over the years of its intention to extend the lease by virtue of the improvements made to the premises; and (2) the Wikmans should have known, based upon their prior business dealings, of its intention to extend the lease term because the continued operation of the business at that location was an essential element of its business success. It maintains the prompt payment of increased rent on April 5, 1983, confirmed this intention and therefore constituted a valid exercise of the option. Moreover, it contends the Wikmans had the burden of inquiry if they had any doubt.

■ ■■■ ■   It is true when, as here, the terms of an option do not require the execution of a new lease, the option need not be exercised in writing. (*Schmitt* v. *Felix* (1958) 157 Cal.App.2d 642, 645 [321 P.2d 473].)[9] But the "tenant [must] exercise the option *before the expiration of*

---

[8]The Wikmans also argue article XX, section 3, indicates ADV had held over rather than extended the lease. But the Wikmans cite only part of that section. Taken as a whole, the clause indicates the landlord's consent, either express or implied, was necessary in order for the tenant to hold over. Nothing in the record indicates the Wikmans consented to a holding over.

[9]"There is a technical distinction between a renewal and an extension. An extension is a stretching or spreading out of the term of the lease. A renewal, on the other hand, creates a new and distinct tenancy, and is not merely a perpetuation of the old one. However, this distinction is not always observed. . . . [W]hether or not the lease provides for a renewal or an extension, unless there is a specific provision to the contrary, it is unnecessary in either event to execute a new lease document." (Miller & Starr, 4 Cal. Real Estate (rev. ed. 1977) § 27:29, pp. 269-270, fns. omitted.)

the original term by an *act or course of conduct* indicating to the lessor his election to renew." (*Cicinelli* v. *Iwasaki* (1959) 170 Cal.App.2d 58, 68 [338 P.2d 1005], italics added; see also *Alhandy* v. *Genchi* (1962) 202 Cal.App.2d 806, 810 [21 Cal.Rptr. 167].) ■■ The Wikmans argue Fisher did nothing more than run the business and abide by the terms of the lease. He gave no verbal or written communications to the Wikmans of any intent to remain past the term of the lease. His expenditures on improvements were not substantial: his resurfacing of the lot was required pursuant to the lease, and the trailer and storage shed were, in any event, movable.

■■ And even if the tenant's conduct may otherwise be insufficient, "[p]ayment . . . of the rental provided in the lease *and its acceptance* by the landlord constitutes an exercise of the option." (*Schmitt* v. *Felix, supra,* 157 Cal.App.2d 642, 645, italics added.) ■■ Here, while there is evidence ADV tendered the increased rent, the record is devoid of any indication it was accepted by the Wikmans.

However, we need not determine whether ADV's actions or conduct were sufficient in and of themselves. The trial court's decision must be affirmed. The mandates of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], compel us to follow *Shamp* v. *White* (1895) 106 Cal. 220 [39 P. 537], where the court stated: "[I]f the lease . . . provide[s] merely for an extension, [the tenant's] remaining in possession (no specific form of notice having been required) [is] sufficient notification of [the tenant's] decision." (*Id.,* at p. 222; see also *Braun* v. *Leo G. MacLaughlin Co.* (1928) 93 Cal.App. 116, 123 [269 P. 191].)

In other words, "if the lessor gives the lessee the right to an extension of the term, and does not specifically require him to give notice of his election to avail himself of such right, his mere continuance in possession after the original term is to be regarded as showing his election to that effect. 'Such a notice had it been given would have been a notice only of the lessee's intention to continue the same occupation, upon the same terms as before. And upon principle it would certainly seem that the actual continuance of such occupation was the best and most conclusive evidence of his intention to continue. The inference is that he intends to continue in possession rightfully according to the terms of his lease, rather than wrongfully.' This doctrine, that the lessee's retention of possession shows an election to extend, applies not only against the lessee, when the extension is asserted as ground for a continued liability on his part, but also in the latter's favor, when it is asserted by him as against the lessor, seeking to recover possession, or otherwise to assert a liability against him as wrongfully holding over. . . ." (2 Tiffany, A Treatise on the Law of Landlord and Tenant (1912), § 222, pp. 1526-1527, fns. omitted.)

We therefore conclude ADV's mere possession of the property at the termination of the lease was sufficient to indicate its intention to extend the lease term and, therefore, to exercise the option.

The judgment is affirmed. Respondent to recover costs on appeal.

Trotter, P. J., and Wallin, J., concurred.