[No. C000181. Third Dist. Aug. 7, 1987.]

In re the Marriage of JANIECE B. and STEVEN T. JOAQUIN.
STEVEN T. JOAQUIN, Respondent, v.
JANIECE B. JOAQUIN, Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, and IV.

COUNSEL

Harley A. Merritt and Leonard & Lyde for Appellant.

Gilbert F. Jones for Respondent.

OPINION

**EVANS, Acting P. J.**—Janiece Joaquin (Janiece) appeals portions of a judgment dissolving her 76-month marriage to Steven Joaquin (Steven), challenging the trial court's characterization of certain property, the duration and amount of spousal support ordered, and the denial of her request for attorney fees. We shall reverse those portions of the judgment charging the community interest in a 97-acre almond ranch with accrued "family expenses" and denying Janiece her request for attorney fees. In all other respects, the judgment will be affirmed.

FACTS

Janiece and Steven were married on May 25, 1974, and separated on September 26, 1980. There were no children of the marriage. On October 8, 1980, Steven petitioned for dissolution. Disputed issues were tried in March, April, and September 1983, and in March 1984. On May 28, 1985, judgment of dissolution was entered. Among other rulings, the court confirmed to Steven as his separate property a leasehold interest in a walnut orchard and the entire ownership interest in an almond ranch. The court further ordered spousal support be paid to Janiece in the amount of $1,000 per month, that amount to be reduced in increments from year to year, with termination of support on October 1, 1987. The court denied Janiece's request for attorney fees and costs. Further relevant facts will be developed in our discussion of Janiece's contentions on appeal.

I

On November 7, 1972, prior to his marriage to Janiece, Steven executed a lease for purposes of farming his father's walnut orchard. The lease was for a period of five years, terminating on November 15, 1977, and provided Steven an option to renew for an additional period of five years. The lease did not specify the manner in which the option was to be exercised, and Steven merely continued to farm the orchard beyond November 15, 1977, on the same terms and conditions.

At trial, the parties did not dispute that the leasehold was Steven's separate property up to November 15, 1977. Nor did the parties dispute that Steven exercised the option to renew during the marriage or that, during the marriage, the community received the benefits (income) derived from Steven's work, labor, and efforts in farming the orchard. The disputed issues were whether, by Steven's exercise of the option to renew, the leasehold became community property and, if so, the value of that community interest for the years 1981 and 1982. The trial court found that Steven's exercise of the option to renew for the second five years did not create a community property interest in his original separate property leasehold. Accordingly, the entire leasehold was confirmed to Steven as his sole and separate property. ▪ On appeal, one of Janiece's contentions is that the court erred in concluding that Steven's exercise of the renewal option during the course of the marriage did not transform the leasehold into community property for the remaining five years of the lease. We disagree.

Janiece relies on Civil Code section 5110, which provides, in pertinent part: "Except as provided in Sections 5107, 5108, and 5126, all real property situated in this state . . . acquired during the marriage by a married person while domiciled in this state, . . . is community property, . . . [¶] As used in this section, . . . real property does include leasehold interests in real property." The key to resolution of Janiece's contention is whether the exercise of an option to renew a lease constitutes an acquisition within the meaning of Civil Code section 5110. We conclude that, on the facts of this case, it did not.

It is necessary in this regard to understand the nature of an option. ▪ "An option, as a matter of legal theory, is considered to have a dual nature: on the one hand it is an irrevocable offer, which upon acceptance ripens into a bilateral contract, and on the other hand, it is a unilateral contract which binds the optionor to perform an underlying agreement upon the optionee's performance of a condition precedent." (*Palo Alto Town & Country Village, Inc.* v. *BBTC Company* (1974) 11 Cal.3d 494, 502 [113 Cal.Rptr. 705, 521 P.2d 1097].) Thus, for example, an option is an indefea-

sible right in the optionee to have real property transferred to him upon his performance of a condition precedent (i.e., that which is required to exercise the option, manifesting acceptance of the optionor's offer). (See *id.,* at p. 503; *Claremont Terrace Homeowners' Assn.* v. *United States* (1983) 146 Cal.App.3d 398, 406-407 [194 Cal.Rptr. 216].) ■ Once the optionee exercises the option, he has a right to specific performance of the transfer, relating back to the time the option was given. (See *id.,* at p. 406; *Rollins* v. *Stokes* (1981) 123 Cal.App.3d 701, 711 [176 Cal.Rptr. 835]; *Anthony* v. *Enzler* (1976) 61 Cal.App.3d 872, 876 [132 Cal.Rptr. 553]; *Seeburg* v. *El Royale Corp.* (1942) 54 Cal.App.2d 1, 4 [128 P.2d 362].) Thus, the optionee's title to the property, at least in equity, was acquired at the time the option was originally given.

■ Under the inception of title theory, real property acquired before marriage is separate. " 'The status of [real] property as separate or community property is fixed as of the time when it is acquired. The word "acquired" contemplates the inception of title, and as a general rule the character of the title depends upon the existence or nonexistence of the marriage at the time of the incipiency of the right by virtue of which the title is finally extended and perfected; the title when so extended and perfected relates back to that time. Stated another way, the status of title, as belonging to one estate or the other, is determined by the status of the original right, subsequently matured into full title. Under this rule, property to which one spouse has acquired an equitable right before marriage is separate property, though such right is not perfected until after marriage. . . . Accordingly, the fact that the title to land owned by a man at the time of his marriage was not perfected by a conveyance from the source of paramount title until after that event does not destroy its character as a separate estate. Property bought before the marriage under a suspensive condition by one of the spouses remains his or her separate property, though the condition is realized after the marriage.' " (*Giacomazzi* v. *Rowe* (1952) 109 Cal.App.2d 498, 500-501 [240 P.2d 1020]; see also 15A Am.Jur.2d, Community Property, § 23, pp. 646-647.)

■ Janiece relies on *Cicinelli* v. *Iwasaki* (1959) 170 Cal.App.2d 58, at page 64 [338 P.2d 1005], for the proposition a provision in a lease giving the lessee an option to renew or extend does not transfer any interest in the land. This is correct to the extent the option remains unexercised. As we have discussed, however, once exercised, the option does transfer an equitable interest in the land relating back to the time the option was given.

Janiece also relies on *Estate of Fellows* (1930) 106 Cal.App. 681, at pages 684-685 [289 P. 887], for the proposition that the renewal of a lease is the creation of a new estate and not a perpetuation of an old one. In *Fellows,*

however, the leases at issue had expired and were subsequently renewed, with a gap between expiration and renewal and with a new consideration paid for the renewal. On those facts, *Fellows* was correct in its holding. By contrast, in this case there is no contention, or evidence, that there was a gap between the expiration of the five-year lease and Steven's exercise of his option to renew for the additional five years. Steven's lease provided merely for an option to "renew" without specifying the manner in which the option was to be exercised and without requiring the execution of a new lease or the payment of new consideration. By remaining in possession beyond the expiration of the original five-year period under the same terms and conditions of the original lease agreement, Steven merely *extended,* or perpetuated, for an additional five years the lease entered into in November 1972. (See *ADV Corp.* v. *Wikman* (1986) 178 Cal.App.3d 61, 65-66 [223 Cal.Rptr. 262].) Under these circumstances, the lease of November 1972 became a 10-year lease (see *Howell* v. *City of Hamburg Co.* (1913) 165 Cal. 172, 177 [131 P. 130]), the exercise of the option, in effect, relating the transfer of the leasehold back to the time of the lease's execution.

■ "There is a technical distinction between a renewal [of a lease] and an extension. An extension is a stretching or spreading out of the term of the lease. A renewal, on the other hand, creates a new and distinct tenancy, and is not merely a perpetuation of the old one. However, this distinction is not always observed. For example, when the lease gives an option to the tenant 'to renew' the lease for a specified term without requiring the execution of a new lease, the courts have regarded the 'renewal' as a continuation of the tenancy under the original lease, rather than a new agreement, and the provisions of the original lease continue for the renewed or extended term." (4 Miller & Starr, Current Law of Cal. Real Estate (1977 rev. ed.) § 27:29, pp. 269-270, fns. omitted; see also *Leonhardi-Smith, Inc.* v. *Cameron* (1980) 108 Cal.App.3d 42, 47 [166 Cal.Rptr 135] ["renewal" of an *existing* lease on real property merely *extended* the term and was *not a new lease*].)

■ Applying the principles respecting lease renewals/extensions, options, and inception of title to the facts of this case, we conclude that Steven's exercise of his option to "renew" the lease in issue merely extended, or perpetuated, it for an additional five years. The exercise of the option effected the transfer of a 10-year leasehold, relating back to November 7, 1972, the date the option was given. As such, any leasehold interest subsequent to November 15, 1977, was "acquired" by Steven, within the meaning of Civil Code section 5110, on November 7, 1972. The court did not err in confirming that leasehold interest to Steven as his sole and separate property.

## II-IV*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Those portions of the judgment charging the community interest in the 97-acre almond ranch with "family expenses" and denying to Janiece her request for reasonable attorney fees and costs are reversed; the matter is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

Blease, J., and Sims, J., concurred.

---

* See footnote, *ante*, page 1529.