Filed 11/23/22  Elson v. Gondrezick CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| JOHN N. ELSON, as Trustee, etc. et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>NATALIE N. GONDREZICK, as Trustee, etc.,<br><br>Defendant and Respondent. | D079216<br><br><br>(Super. Ct. No. 37-2018-00054190-CU-0R-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Stallone Law Offices and David O. Stallone for Appellants.

Law Offices of Edward W. Freedman and Edward W. Freedman for Respondents.

Through their revocable trusts, John Elson and his son Joseph Elson (collectively, the Elsons) are the former and current owners of property

bordering Natalie N. Gondrezick's property.[1]  The Elsons sued Gondrezick to quiet title to an alleged easement on Gondrezick's property consisting of eight parking spaces and a right-of-way used by the Elsons' tenant, Volare Italian Restaurant (Volare).  The Elsons asserted that they had rights to the easement by three separate claims:  prescription, necessity, and prior use. After a bench trial, the trial court ruled in Gondrezick's favor on all of the Elsons' claims.

The Elsons contend on appeal that the court erred by:  (1) applying a clear and convincing evidentiary standard; (2) making various mistakes of law in denying a prescriptive easement; (3) finding the Volare property is not landlocked for the purposes of an easement by necessity; (4) finding the Elsons did not meet their burden for a prescriptive easement to the parking spaces and right-of-way; and (5) declining to grant equitable relief.

We conclude that the Elsons forfeited their standard of proof argument, and even if they had not, any error would be harmless.  We also conclude that because the sole basis for the trial court's final ruling was simply that the Elsons failed to meet their burden of proof, its ruling must be affirmed unless the evidence *compels* a judgment in their favor.  Finally, we conclude that the evidence does *not* compel a judgment in the Elsons' favor on their claims for prescriptive easement and easement by necessity claims, and they forfeited their equitable easement claim.  Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Properties*

In 2001, John Elson (Elson Sr.) purchased two adjacent properties on Barnett Avenue from his mother.  Barnett Avenue runs along the southern

---

[1]    We refer to the Elsons and Gondrezick in their capacities as trustees for their respective trusts, the actual owners of the properties.

2

border of the two properties.  In 1978, when Elson Sr.'s mother still owned both properties, Volare leased one of the properties (Volare property) and has been a tenant ever since.  Volare's front door abuts Barnett Avenue, and at least two other restaurant tenants occupied the property before Volare.  When Elson Sr. began managing the two parcels in 1991, he opened a fishing and tackle business (SquidCo) on the other property (SquidCo property), which sits west of Volare.  In January 2021, Elson transferred the SquidCo and Volare properties to his son, Joseph Elson (Elson Jr.).

A third parcel abutting Volare on the east side (Gondrezick's property), has been owned by Gondrezick's family since the 1930s.  Gondrezick inherited the property from her mother in 1987 and let a bank manage it until 2007, when she took over management.  Since at least 1968, the Elsons' restaurant tenants have used eight parking spaces and a right-of-way located just east of Volare on Gondrezick's property for customer parking, trash collection, grease trap service, and receiving deliveries at the back of the restaurant.  During that time, the auto shop tenants on Gondrezick's property also used the right-of-way for deliveries and occasionally used the parking spaces as well.

In 2005, Christopher John Peters took over an existing lease on Gondrezick's property to open a smog testing shop (AA Smog Shop).  The existing lease was set to expire in April 2008 and covered all of Gondrezick's property except for a carve-out of "that portion of the westerly approximately 12 feet . . . utilized for eight parking spaces" by Volare.  In April 2008, Peters and Gondrezick signed another lease extending from May 2008 through April 2013.  The new lease contained the same carve-out and also included an option to extend the lease for an additional five-year period.

In 2011, Peters started an automotive repair business on Gondrezick's property (San Diego Auto Clinic) and combined it with AA Smog Shop. Peters exercised his option to extend his lease in 2013, and after the extended lease expired in April 2018, Peters and Gondrezick entered into a new 10-year lease for the entirety of Gondrezick's property, including the parking spaces.

Meanwhile, in early April 2008, Elson Sr. and Gondrezick signed a one-page lease with "[two] 5-YR OPTIONS" printed down the middle of the page. The lease provided that Elson Sr. would pay Gondrezick $80.00 per month to use the eight parking spaces on Gondrezick's property from May 2008 through April 2013, for a total rent amount of $4,800.00. The lease also provided that those same terms would apply for a second option period from May 2013 through April 2018. The document was drafted by Elson Sr. and printed on his letterhead; it did not include any terms other than the monthly rent and the two 5-year options; and it did not specify how the options were to be exercised.

The lease agreement included separate signature lines for each of the two 5-year options. Gondrezick and Elson Sr. each signed their names for both five-year options, and Elson Sr. sent Gondrezick a check for $4,800.00 as full payment for the first five years. When the first five-year term expired in April 2013, Elson Sr. did not pay any additional rent for the second five-year period, but Volare continued to use the parking spaces and the right-of-way to access the rear of the restaurant.

Gondrezick took over the management of her property in 2007, but her tenants were "self-managing" and she left "it up to them." According to Gondrezick, she believed her lease with Elson Sr. was a two-part lease with the first part covering 2008 to 2013, and the second part covering 2013 to

4

2018. Gondrezick believed the lease ran the entire ten years from 2008 to 2018. She also believed the lease covered the right-of-way in addition to the parking spaces because Elson Sr. specifically asked to lease that area for trash collection and deliveries. The evidence establishes that it would have been impossible to access the parking spaces without using at least the southern portion of the right-of-way.

When the first five-year term of Elson Sr.'s lease ended in 2013, Gondrezick did not contact Elson Sr. about the second five-year period because "it hadn't crossed [her] mind." Around that same time period, Peters told Gondrezick that he wanted to use the entire property to expand his business and build additional vehicle lifts in the parking spaces and right-of-way areas Volare was using. Gondrezick told Peters he could do so once Elson Sr.'s lease expired in 2018.

According to Gondrezick, Elson Sr. and Volare had permission to use the parking spaces and the right-of-way from 2008 to 2018. Peters also believed that from 2002 through 2018, Volare had leased the right-of-way and had permission to use it. He assumed that Elson Sr.'s lease allowed for deliveries using the right-of-way, and that Elson Sr.'s lease went until 2018.

On May 10, 2018, shortly after Elson Sr.'s second option term would have expired and Peters and Gondrezick entered their 10-year lease covering the entirety of Gondrezick's property, Peters's wife sent a notice letter to Volare's owners. The notice letter stated that in 30 days, Volare would no longer be able to use Gondrezick's property for parking and trash collection, and that AA Smog Shop and San Diego Auto Clinic would have full access to the lot per their lease agreement with Gondrezick. Soon after sending the letter, Peters marked off areas of Gondrezick's property next to Volare where he planned to build a fence and he set up signs prohibiting parking. In

5

response, Elson Sr. moved several vehicles into the parking spaces to prevent Peters from constructing a fence.

B. *Additional Witness Testimony*

Elson Sr. testified that he made a business decision not to pay Gondrezick rent for the parking spaces during the second option term from 2013 to 2018, even though Volare continued to use the spaces during that time. He made that decision because one of Gondrezick's former tenants told him that Gondrezick was "extremely hard to work with," and Elson Sr. was not "comfortable" being bound to another term.

Elson Jr. had been working at SquidCo with his father since 1991. He testified that in years past he had observed Gondrezick's tenants using the parking spaces next to Volare during mornings before the restaurant opened. According to Elson Jr., around 2013, his father told him that they "might have issues with the parking" and "might be kicked off[.]" However, Elson Jr. said he and his father "always believed that the . . . right-of-way, was always there[,]" that they "never envisioned that the right-of-way would be an issue[,]" and that it "was always opened to be shared between both properties."

The Elsons' expert witness, architect George Rivera, testified that providing alternative vehicle access to the rear of Volare by means other than the contested right-of-way would require demolishing portions of both the SquidCo and Volare buildings. Rivera also testified that building and municipal code requirements would make it difficult to create alternate paths to the back of Volare.

A restaurant employee and one of Volare's owners both testified that it would be difficult to receive deliveries without using the right-of-way leading to the rear of the restaurant. They did not accept deliveries through the front

door before 2018 because supply pallets are too large to fit through the door frame, bringing supplies through the dining room would be unsanitary and cause damage, and parking trucks on busy Barnett Avenue in front of Volare is dangerous. The restaurant's dumpster is at the back of the restaurant, and garbage trucks collect trash using the right-of-way.

Fernando Solis, an employee of San Diego Auto Clinic, testified that around May 2018, Elson Sr. came to their business office after receiving the notice letter from Peters. Elson Sr. seemed upset and said that he thought he had three more years left on a 10-year lease.

C. *Trial Court Proceedings*

The Elsons sued Gondrezick to establish an easement to the parking spaces and right-of-way. They asserted claims for (1) quiet title due to prescriptive easement; and (2) quiet title due to easement by necessity.

The Elsons alleged that "[f]or over 30 years . . . the owner of the RESTAURANT PROPERTY had an agreement with the owner of the SMOG SHOP property for the use of the immediate area abutting the RESTAURANT PROPERTY for parking when needed by Restaurant customers or Restaurant deliveries." They further alleged that this agreement was "for compensation" and "included the free right of way for such cars to enter and leave such parking as reasonably necessary." However, the complaint alleged that the Elsons' use of Gondrezick's property became "hostile" when they failed to exercise the second five-year option of their lease with Gondrezick in 2013, but continued using the property for a five-year period from 2013 through 2018.

The matter proceeded to a bench trial. On the third day of trial, during their presentation of evidence, the Elsons sought to add Volare as a plaintiff and Peters as a defendant, as well as two additional causes of action: implied

7

easement by prior use and equitable easement. Gondrezick's attorney objected to the proposed amendments because they would change the presentation of evidence related to balancing equities, an element of equitable easement. After an off-the-record discussion, the Elsons decided to proceed without amending the complaint at that time. The following day, the Elsons sought and received permission from the court to add only a claim for implied easement by prior use.

At the close of the Elsons' case, Gondrezick moved for judgment on the claims for easement by necessity and easement by prior use. The court granted the motion as to both claims. First, as to easement by necessity, the court found that the Elsons' proof did not show that the Volare property is landlocked because it abuts Barnett Avenue on the south side and the parcel to its west is also owned by the Elsons.

Second, as to easement by prior use, the court found that the Elsons did not meet their burden of proving that a continuous prior use existed before the Volare property was separated from Gondrezick's property, or that the prior use gave rise to the easement. Specifically, the court found insufficient proof that a previous common owner of the two parcels accessed the Volare property using the right-of-way on Gondrezick's property.

After hearing the remaining witness testimony and the parties' closing arguments, the court then ruled that the Elsons did not meet their burden of proof by clear and convincing evidence on the prescriptive easement claim. The court also declined to grant the Elsons' various oral requests for equitable relief. The court clarified that its final ruling and findings did not include any previous comments on the record about a potential prescriptive easement claim Volare might have against Peters for the right-of-way. The

8

court also reiterated that its ruling was limited to determining that the Elsons did not have a prescriptive easement against Gondrezick.

Neither party requested a statement of decision. On May 18, 2021, the court issued a "Judgment on Court's Decision" summarizing the case's procedural history, entering judgment in favor of Gondrezick, and awarding Gondrezick her costs. The Elsons timely appealed.

DISCUSSION

I

We first address the Elsons' contention that the trial court applied the wrong standard of proof in deciding their claims. We conclude that the Elsons forfeited this argument by conceding it at trial, and that even if the court did err, any error was harmless.

Although the Elsons argued on summary judgment that the applicable standard for proving prescriptive easements is preponderance of the evidence, their counsel later conceded at trial that a clear and convincing evidence standard applied. In a discussion of pretrial matters, counsel for Gondrezick explicitly argued for the clear and convincing evidence standard. The court then asked counsel for the Elsons: "[A]s far as [clear] and convincing, do you dispute that? I didn't get the flavor from your trial brief you really disputed that."[2] Counsel for the Elsons responded: "No. It would appear for the most part, yeah. It's clear and convincing. Yeah." Nothing in the appellate record demonstrates that the Elsons retracted this concession

---

[2] The parties' trial briefs are not part of the record on appeal.

9

during trial, even when the court later referred to and applied the clear and convincing evidence standard.[3]

In these circumstances, the Elsons have waived their argument on the standard of proof. (See *In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412 ["By failing to object, [appellant] waived any error in using the clear and convincing evidence standard of proof"]; see also *Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 808 ["[a]lthough [appellant] asserted the statute of limitations as an affirmative defense in his answer, he did not raise it at trial. We decline to consider an argument that [appellant] did not make below"].) As a general rule, "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

Even assuming there was any non-forfeited error, however, we would find it to be harmless. The trial court explicitly stated it would have reached the same result for the easement by necessity claim under a preponderance of the evidence standard. As to the prescriptive easement claim, the Elsons make no argument as to why there is a reasonable probability the court would have reached a different result under a preponderance standard. We

---

[3] In their reply brief, the Elsons assert that they filed a brief "[d]uring trial" arguing that the preponderance of evidence standard applied to the prescriptive easement claim. However, they do not provide a supporting citation and there is no such brief in the appellate record. Neither the register of actions nor the reporter's transcript refers to any supplemental briefing on the standard of proof filed during trial. One of the "immutable rules" of appellate practice is that "if it is not in the record, it did not happen . . . ." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.)

must assess prejudice "when *and only when* the appellant has fulfilled his duty to tender a proper prejudice argument" by "spelling out in his brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106, italics added.) Because the Elsons did not do so, they have failed to demonstrate any reversible error, even assuming the issue was preserved for appeal. (See *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 533 [finding no prejudice where appellant "failed to explain how the result would have been any different if the trial court had applied the clear and convincing evidence standard of proof instead of the preponderance of the evidence standard"].)

## II

We turn next to the Elsons' argument that the trial court erred in granting judgment on their easement by necessity claim. An order granting judgment at the close of a plaintiff's case is reviewed under the same substantial evidence standard as for a judgment granted after trial. (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.) "The usual rule of conflicting evidence is applied, giving full effect to respondents' evidence, however slight, and disregarding appellant's evidence, however strong." (*Applegate v. Ota* (1983) 146 Cal.App.3d 702, 708.)

Because the court found that the Elsons failed to meet their burden of proof on their necessity claim, " 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing*

11

*Technologies, Inc. v. AAE Systems, Inc.*, (2011) 196 Cal.App.4th 456, 466 (*Sonic*).)

An easement by way of necessity arises when a party establishes that: " '(1) there is a strict necessity for the right-of-way, as when the claimant's property is landlocked and (2) the dominant and servient tenements were under the same ownership at the time of the conveyance giving rise to the necessity.' " (*Kellogg v. Garcia* (2002) 102 Cal.App.4th 796, 799.) "[S]trict necessity" requires that the claimed easement is "the only means by which access may be had to the claimant's property." (See *Daywalt v. Walker* (1963) 217 Cal.App.2d 669, 672, citing 17 Cal.Jur.2d Easements, § 16.) If a party can access their property through their own land, there is no strict necessity, even if access is difficult and inconvenient. (*Ibid.*) Furthermore, " '[t]he mere fact that the land owned by the claimant is bounded on one side by a road which connects with county roads is alone fatal to the existence of a way of necessity.' " (*Ibid.*)

We conclude the evidence amply supports the trial court's ruling that the Volare property is not landlocked and there is therefore no strict necessity. Barnett Avenue runs along the southern border of the Volare property, and the Elsons concede that the property can be accessed through the front. The Elsons also own both the Volare property and the neighboring SquidCo property. These facts, which the parties do not dispute, are sufficient to defeat the Elsons' necessity claim.

The Elsons contend that health and safety regulations would make restaurant operations "extremely impracticable" absent the easement, but even if true that still would not compel a judgment in the Elsons' favor because as they acknowledge in their opening brief, strict necessity is required to succeed on their claim. (See *Murphy v. Burch* (2009) 46 Cal.4th

12

157, 164 ["To satisfy the strict-necessity requirement, the party claiming the easement must demonstrate it is strictly necessary for access to the alleged dominant tenement. [Citation.] No easement will be implied where there is another possible means of access, even if that access is shown to be inconvenient, difficult, or costly."].) Accordingly, we affirm the trial court's ruling on the easement by necessity claim.

## III

On the prescriptive easement claim, the Elsons argue that the trial court erred in its oral comments regarding the proper parties to the prescriptive easement claim, and whether the claim should have been asserted by Volare against Peters. The Elsons argue that: (1) as Peters's landlord, Gondrezick had opportunities to assert her property rights against Volare's allegedly hostile use during breaks in Peters's tenancy; and (2) Volare's allegedly hostile use inured to the benefit of the Elsons as the owner/landlord of the Volare property.

We conclude that these alleged errors were not the basis for the trial court's final ruling on the prescriptive easement claim. The trial court expressly excluded from its final ruling any prior statements it had made about these matters. The court described those prior comments as "pure dicta," indicating that they should not be considered a basis for the court's decision. (See *Serrano v. Aerotek, Inc.* (2018) 21 Cal.App.5th 773, 784 [" ' "Dictum is the 'statement of a principle not necessary to the decision." ' "].) And the court emphasized after a recess: "I just wanted to super-clarify something. And that is, that my ruling here is just that the Plaintiff didn't

satisfy his burden of proof by clear and convincing evidence on the claim against the Defendant, Gondrezick. *That's it*." (Italics added.)

While a court's oral comments may be useful in explaining the trial judge's theory, they may not be used to impeach the order or judgment on appeal. (See *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268.) Because the court expressly excluded from its final ruling any remarks about other potential parties, we conclude they serve no basis for reversal on appeal. (See *Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1451 ["where the trial court was not required to prepare a statement of decision . . . it is especially important to refrain from using the court's oral comments as a basis for reversal"].) The court's only ruling on the prescriptive easement claim was that the Elsons failed to meet their burden of proving a prescriptive easement against Gondrezick. We turn to that issue next.

IV

The Elsons contend that the trial court erred by finding they did not meet their burden of proving a prescriptive easement for the parking spaces and right-of-way. The party claiming a prescriptive easement must "show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years." (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 (*Warsaw*).) The Elsons conceded below that the primary issue here is adverse use. "Adverse use" means that the claimant's use of the property was made without the explicit or implicit permission of the landowner. (*Aaron v. Dunham* (2006) 137 Cal.App.4th 1244, 1252.)

Whether a claimant has established the elements of a prescriptive easement is a factual question, and we will not disturb the trial court's

14

findings on appeal if they are supported by substantial evidence. (*Warsaw*, *supra*, 35 Cal.3d at p. 570.) More specifically, the question "[w]hether the use is hostile or is merely a matter of neighborly accommodation . . . is a question of fact to be determined in light of the surrounding circumstances and the relationship between the parties." (*Id*. at p. 572.)

Because the trial court found that the Elsons failed to meet their burden of proving a prescriptive easement, the question before us is whether the evidence *compels* a judgment in their favor on this claim as a matter of law. (*Sonic, supra*, 196 Cal.App.4th at p. 466.) The Elsons acknowledge "that on appeal from a determination of failure of proof at trial, the question for the reviewing court is whether the evidence compels a finding in favor of the appellant as a matter of law." We conclude that the evidence does not compel a finding in the Elsons' favor on their prescriptive easement claim— because the evidence viewed in the light most favorable to the judgment does not compel a finding that Volare's use of the parking spaces and right-of-way was adverse or hostile, rather than permissive, for any five-year period.

First, with respect to the Elsons' claim of hostile use from 2013 through 2018, there is substantial evidence to support the finding that Elson Sr. exercised the second five-year option of his lease with Gondrezick covering this time period. As the court noted, Elson Sr. drafted the parking lease (on his own letterhead) and it did not address how the second option should be exercised. Elson Sr. and Gondrezick signed both options in the lease and Elson Sr. continued to allow Volare to use the parking spaces during the second five-year period. In the absence of any lease provision dictating how the second five-year option had to be exercised, the fact that the parties signed the second five-year option and that Elson Sr. continued to allow Volare to use the parking spaces is sufficient to support a finding that he

15

exercised the option. (See, e.g., *ADV Corp. v. Wikman* (1986) 178 Cal.App.3d 61, 67 [tenant's mere continued possession of property at termination of lease was sufficient to indicate intention to extend lease term and exercise option].) The use of another's property under a lease is not hostile or adverse. (*Felgenhauer v. Soni* (2004) 121 Cal.App.4th 445, 450.)

Second, even if we were to assume that Elson Sr. did not exercise the second option, the record still would not compel a finding that Volare used the parking spaces and right-of-way without Gondrezick's express or implied permission after 2013. Where initial use of property is permissive, it cannot become adverse without clear notice to the owner of the adverse nature of the subsequent use. (*Southern Pacific Co. v. City and County of San Francisco* (1964) 62 Cal.2d 50, 56 [discussing adverse possession]; see also 6 Miller & Starr, Cal. Real Estate (4th ed. June 2022 update) Easements, § 15:36 ["Once permission is given, it is presumed to continue until the user communicates to the servient tenement owner a clear and unqualified disclaimer and repudiation of the permission"].)

The record here does not compel a finding of clear notice that Volare's permissive use of the Gondrezick property became adverse in 2013. Gondrezick testified that from 2008 to 2018, Elson Sr. and Volare had permission to use the parking spaces and the right-of-way. She believed that her lease with Elson Sr. ran from 2008 to 2018, and that it included both the parking spaces and the right-of-way. Peters also believed Volare had permission to use the parking spaces and the right-of-way from 2002 through 2018. Both Peters and Gondrezick testified that when Peters asked Gondrezick about expanding his use of her property around 2013, she told him he would have to wait until Elson Sr.'s lease expired in 2018. Moreover, the testimony of employee Fernando Solis supports a finding that Elson Sr.

16

himself believed his lease with Gondrezick was still in effect as late as May 2018. All of this evidence supports a finding that Elson Sr. and Volare used the parking spaces and right-of-way with Gondrezick's express or implied permission from at least 2008 through 2018.

We do not second-guess the trial court's weighing of the evidence as the trier of fact, including its implicit determination that Gondrezick's and Peters's testimony was credible. (See *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1127.) Their testimony alone constitutes substantial evidence to support the trial court's ruling in favor of Gondrezick on the prescriptive easement claim. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [" 'The testimony of a witness, even the party himself, may be sufficient.' "].)

In their opening brief, the Elsons assert in passing that Volare's prescriptive use of the right-of-way began in 1978, even though their complaint arguably only alleged a prescriptive period of 2013 through 2018. However, the Elsons do not expressly challenge the trial court's implicit finding that they failed to prove any *adverse* use of the right-of-way for the required five-year period. In their verified complaints, the Elsons themselves alleged that for "over 30 years," the owners of the Volare property and Gondrezick's property "had an agreement" for use of the parking spaces and right-of-way. These admissions are binding on the Elsons. (See *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187 [" 'The admission of fact in a pleading is a "judicial admission." [Citation.] A judicial admission in a pleading is not merely evidence of a fact; it is a conclusive concession of the truth of the matter.' "].) Furthermore, the Elsons point to no evidence that would compel a finding as a matter of law that Volare's use of the right-of-

17

way was hostile or adverse (rather than permissive) for any five-year period beginning on or after 1978. (See *Sonic, supra,* 196 Cal.App.4th at p. 466.)

We therefore affirm the trial court's ruling that the Elsons failed to meet their burden of establishing a prescriptive easement for the parking spaces and right-of-way.[4]

V

Lastly, the Elsons argue the trial court erred by declining to grant equitable relief. We disagree. The Elsons forfeited any separate claim for an equitable easement by withdrawing their request to allege such a claim in their amended complaint during trial, and by raising the issue for the first time in their reply brief on appeal. And because the trial court properly concluded that the Elsons failed to meet their burden of proving a prescriptive easement or easement by necessity, it had no authority to grant equitable relief on those failed claims.

The Elsons forfeited any equitable easement claim by choosing not to assert it in their amended complaint after proposing to do so on the third day of trial. The Elsons' counsel told the court that it would be adding Volare as a plaintiff and Peters as a defendant, as well as two additional causes of action: implied easement by prior use and equitable easement. Gondrezick's

---

4    Several of the issues the Elsons raise on appeal assume they proved a hostile use of Gondrezick's property for the prescriptive period, including that Gondrezick had an opportunity to defend her property rights against Volare's hostile use during breaks in Peters's tenancy, and that an easement in favor of Volare would inure to the benefit of the Elsons. As noted, however, the trial court simply ruled that the Elsons failed to meet their burden of proving a prescriptive easement, and we must affirm if the evidence supports the judgment on any legal theory. Because the evidence does not *compel* a finding of hostile use (*Sonic, supra,* 196 Cal.App.4th at p. 466), we resolve the appeal on this ground without deciding the other issues raised by the Elsons that assume a hostile use.

counsel objected, noting that the equitable easement claim would "change the entire dynamics of the case" and require presenting new evidence related to balancing hardships.[5]  The Elsons ultimately decided not to add an equitable easement claim, and in advocating for adding an easement by prior use claim, their attorney stated that the amended complaint would allege "the same exact facts," alleviating prejudice to Gondrezick.

Nonetheless, during subsequent oral argument and in closing, the Elsons' attorney suggested that the court use its "equitable powers" to fashion a remedy in connection with their prior use and prescriptive easement claims.  Gondrezick's counsel pointed out that when the Elsons decided against adding an equitable easement claim, Gondrezick's counsel relied on that decision and did not present evidence showing the balance of hardships from his client's perspective.

It would be unfair to allow the Elsons to argue a theory on appeal that it chose not to pursue at trial, especially when Gondrezick's counsel was led to believe he would not need to present evidence on that theory.  (See, e.g., *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344 [" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal . . . .  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change

---

[5]    Judicial creation of an equitable easement over a landowner's property is permissible if a trespasser encroaching on the property shows:  (1) his or her trespass was innocent and not willful or negligent, (2) the property owner will not be irreparably injured by the easement, and (3) the hardship to the claimant from ceasing the trespass is greatly disproportionate to the hardship to the owner from continued encroachment.  (*Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, 183.)  "Unless all three prerequisites are established, a court lacks the discretion to grant an equitable easement."  (*Ibid.*)

19

of theory on appeal.' "]; *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 ["The general rule that a legal theory may not be raised for the first time on appeal is to be stringently applied when the new theory depends on . . . factual questions whose relevance . . . was not made to appear at trial."].)

We also reject the Elsons' efforts to revive their equitable easement claim for the first time in their reply brief. Their opening brief initially asserted that the trial court erred by ruling it could not "exercise its equitable powers to impose an easement *by necessity* where all the elements have not been proved." (Italics added.) In a section on the court's equitable powers, the Elsons began by discussing the trial court's ruling on easement by necessity, then later pivoted to arguing that the equities "weigh in favor of recognizing the prescriptive easement." In other words, the Elsons only argued the equities in connection with their claims for easement by necessity or prescriptive easement, not as a basis for a separate claim of equitable easement. The first time the Elsons directly argued that the trial court erred by failing to grant an equitable easement was in their reply brief. "We do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them before." (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 822.)

Nor did the trial court have authority to grant equitable relief on the other two easement claims for which it concluded that the Elsons had failed to satisfy their burden of proof. The Elsons are correct that in some cases, a court may grant an equitable easement and refuse to enjoin a party's encroachment on another's property when the encroaching party cannot establish a prescriptive easement, in an exercise of the court's equity powers " 'to affirmatively fashion an interest in the owner's land which will protect

20

the encroacher's use.' " (See, e.g., *Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1093, fn. 5, quoting *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 765.) But in these cases, the claiming party did not expressly withdraw their request to assert a claim for an equitable easement, as the Elsons did here. Moreover, these cases involved property owners' requests for removal of physical encroachments, which are distinct from the use and access rights at issue here. (See *Harrison,* at p. 1093, fn. 5 ["Such an equitable 'encroachment right' is similar to, but doctrinally distinct from, a prescriptive easement."]; *Hirshfield,* at pp. 764-765, 767-771 [discussing "[t]he existence of this equitable power in California law" in the context of encroaching land improvements].) Because the Elsons forfeited their claim for an equitable easement, and the trial court properly ruled that they failed to meet their burden of proving a prescriptive easement or easement by necessity, the court committed no error by denying equitable relief.

## DISPOSITION

The judgment is affirmed. Respondent shall recover her costs on appeal.

BUCHANAN, J.

WE CONCUR:

MCCONNELL, P. J.

DO, J.